**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **GRANBIO SERVICES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:24-cv-93 (MTT)** |
| | ) | |
| **PETRON SCIENTECH, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## ORDER

Plaintiff GranBio Services, Inc. ("GranBio") filed this lawsuit seeking a declaratory judgment against Defendant Petron Scientech, Inc. ("Petron") that a draft agreement between the parties is unenforceable.  Doc. 1.  Petron failed to answer and is in default.  Docs. 5; 9.  Pursuant to Fed. R. Civ. P. 55(b), GranBio now moves for entry of default judgment against Petron.  Doc. 10.  For the reasons below, GranBio's motion (Doc. 10) is **GRANTED**.

## I. BACKGROUND

The allegations of the complaint are deemed admitted by way of Petron's default and establish the following.  GranBio is a Delaware corporation with its principal place of business in Thomaston, Georgia.  Doc. 1 ¶ 1.  GranBio and its affiliates "work[] to accelerate the production of sustainable biofuels for America's transportation and manufacturing needs."  *Id.* ¶ 6.  Petron is a New Jersey corporation with its principal place of business in New Jersey and claims to be "a world Leader for the latest and most efficient … technologies for the production of Ethanol."  *Id.* ¶¶ 2, 7.

On June 7, 2017, GranBio (then known as American Process, Inc. ("API")), Petron, and a third-party corporation named Byogy Renewables, Inc., executed a two-page draft Memorandum of Understanding ("Draft MOU").  *Id.* ¶ 8.  Petron drafted the agreement which was intended to express the desire of the parties to potentially form a business relationship related to Phase 2 of the U.S. Department of Energy's ("DOE) 2016 Advanced Biofuels and Bioproducts with AVAP ("ABBA") project.  *Id.* ¶ 9.  It is the Court's understanding that AVAP refers to GranBio's affiliate AVAPCO LLC.  Based on the attachments to the complaint and the materials cited therein, this Draft MOU "was a requirement from Petron to participate in the ABBA project and provide a cost share." Doc. 1-3 at 3.  The Draft MOU provides that:

> [s]hould the U.S. DOE not award Phase 2 funding to the project, Petron will be notified by [GranBio] when its technology will be licensed or otherwise commercially implemented for the purpose of producing ethylene/jet fuel from ethanol … [and] Petron shall be granted the right to enter into discussions with said licensees to provide Petron's ETE technology.

Docs. 1 ¶ 10; 1-1 at 2.  It also states that "[t]hese terms are agreed in this draft in anticipation of turning this into a final MOU."  Docs. 1 ¶ 10(c); 1-1 at 2.  But GranBio never entered into a final MOU with Petron.  Doc. 1 ¶ 11.  Moreover, the DOE informed GranBio that Phase 2 of the ABBA project would not proceed on September 27, 2019. Docs. 1 ¶ 12; 1-2.  GranBio informed Petron of the DOE's decision two days later, on September 29, 2019.  Doc. 1 ¶ 13.

On October 1, 2023, AVAPCO LLC was awarded an "Assistance Agreement" for the "Enabling Net Zero" project (the "ENZ project") by the DOE totaling $80,000,000. Doc. 1 ¶¶ 17, 19 n.2.  According to GranBio, the ENZ project differed from the ABBA project on multiple fronts, including having a different funding opportunity

announcement, a unique award number, and distinctive obligations.  *Id.* ¶ 17.  However, attachments to GranBio's complaint reference a press release published by the DOE regarding the ENZ project.  Doc. 1-3.  "Petron was [not only] listed in the press releases announcing the award [but also] complimented by [GranBio's] team for [Petron's] support in winning the award."  *Id.* at 2.  AVAPCO LLC considered Petron's ETE technology for the ENZ project, but ultimately decided to purchase a license from a different technology supplier.  Doc. 1 ¶ 18.

In an email dated November 15, 2023, Petron's Executive Vice President and Chief Operating Officer, Frank Liotta, claimed that "[e]ven if one were to accept [the] premise that … the $80 MM grant is separate from [the] ABBA project, A PREMISE THAT PETRON DOES NOT ACCEPT, AVAPCO is still bound by the final clause of the MOU that requires Petron ETE technology be used in any commercial implementation." Docs. 1 ¶ 19; 1-3 at 3.  GranBio asserts that it does not have any legal obligations under the Draft MOU, as it was a non-binding and unenforceable agreement to agree— a mere "draft in anticipation" of a potential future contract.  Doc. 1 ¶ 14.  Despite numerous follow-up communications, Petron and GranBio cannot agree on the enforceability and scope of the Draft MOU.  *Id.* ¶ 20.

On March 15, 2024, GranBio filed this action seeking a declaratory judgment that the Draft MOU is unenforceable.  Doc. 1.  Petron was served on March 23, 2024.  Doc. 5.  GranBio served the Summons and Complaint on Petron through a process server who left the documents at the residence of Petron's CEO and President.  *Id.*  Although the CEO initially opened the door, he refused to reopen it to accept the documents, prompting the process server to leave the papers at the premises.  *Id.* at 1.  Petron

subsequently failed to answer or otherwise appear in this case.  GranBio requested

entry of default against Petron, which was granted on July 24, 2023.  *See* Doc. 9.

GranBio now moves for entry of default judgment against Petron pursuant to Fed. R.

Civ. P. 55(b).  Doc. 10.

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court must enter

a party's default if that party's failure to plead or otherwise defend an action against it "is

shown by affidavit or otherwise."  After default has been entered, the Clerk may enter a

default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that

can be made certain by computation," as long as the party is not a minor or incompetent

and has not made an appearance.  Fed. R. Civ. P. 55(b)(1).  In all other cases, the

plaintiff must apply to the Court for a default judgment.  Fed. R. Civ. P. 55(b)(2).  The

Court must hold an evidentiary hearing to determine damages unless all the essential

evidence is already in the record.  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th

Cir. 2005) ("We have held that no such hearing is required where all essential evidence

is already of record."); *see also* Fed. R. Civ. P. 55(b)(2) ("The court may conduct

hearings[.]").

After the Clerk's entry of default, a defendant is deemed to have admitted all

well-pleaded factual allegations in the complaint.  *Nishimatsu Const. Co., Ltd. v.

Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]  However, an entry of default

against the defendant does not establish that the plaintiff is entitled to a default

judgment.  The defendant is not deemed to admit facts that are not well-pleaded or

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

conclusions of law.  *Id.*  "The Court must consider whether the unchallenged facts constitute a legitimate cause of action, because the party in default does not admit a mere conclusion of law.  In considering any default judgment, the Court must consider (1) jurisdiction, (2) liability, and (3) damages."  *Johnson v. Rammage*, 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)).  The defendant is also not deemed to admit the plaintiff's allegations relating to the amount of damages.  *Patray v. Nw. Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]").

### III. JURISDICTION

To enter a valid default judgment, the Court must have both personal and subject matter jurisdiction.  *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." (alteration in original)).  Additionally, in cases involving declaratory relief, a plaintiff must establish that an "actual controversy" exists between the parties, as required by Article III of the U.S. Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

First, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the

amount in controversy exceeds $75,000. GranBio is a Delaware corporation with its principal place of business in Georgia. Doc. 1 ¶ 1. Petron is a New Jersey corporation with its principal place of business in New Jersey. *Id.* ¶ 2. Thus, for purposes of diversity jurisdiction, Petron is a citizen of New Jersey and GranBio is a citizen of Georgia and Delaware. The amount in controversy requirement is satisfied because GranBio has adequately alleged that the draft agreement in question involved a potential business relationship with an estimated value far exceeding $75,000. *Id*. ¶¶ 3, 19 n.2.

Second, the complaint also sufficiently alleges that the Court has personal jurisdiction over the defendant. Personal jurisdiction can be general or specific. General jurisdiction allows all kinds of suits against a defendant, but only in states where the defendant is "at home" or, in most cases, is served with process.[2] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) ("[A]n individual is subject to general jurisdiction in her place of domicile"). Specific jurisdiction, on the other hand, must arise out of the events or transactions underlying the claim that forms the basis of the lawsuit. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). For specific jurisdiction to be proper, "the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the

---

[2] The Supreme Court has suggested "the possibility that in an exceptional case … a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014) (citing, *e.g.*, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448(1952)). This is not an exceptional case.

litigation." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

Here, GranBio adequately alleged specific jurisdiction over Petron.  Petron is a corporation organized under the laws of New Jersey and conducts business nationwide, including in Georgia.  Doc. 1 ¶¶ 2, 7.  Petron was properly served with process under Federal Rule of Civil Procedure 4 and O.C.G.A. § 9-11-4.  Doc. 5.  The process server's delivery of the summons and complaint to the home of Petron's CEO and President satisfies service requirements, despite his refusal to reopen the door and accept the papers.[3]  GranBio's claim for declaratory judgment arises out of and relates to Petron's contacts with the State of Georgia, as the work with which Petron seeks to be involved takes place in and/or is directed from Thomaston, Georgia.  Doc. 1 ¶ 4.  Additionally, many of the negotiations at issue in this action took place in Georgia, and Petron leased equipment to an affiliate of GranBio in Georgia and is still utilizing real property in Georgia for storage of such equipment.  *Id.*  For these reasons, Petron purposefully availed itself of the privilege of conducting activities within Georgia and invoked the benefit of Georgia's laws.  Thus, there is a sufficient nexus between Petron's contacts and this litigation.

Finally, GranBio has standing to seek declaratory relief under 28 U.S.C. § 2201. The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  Thus, to bring a

---

[3] *See S.E.C. v. Reinhard*, 352 Fed. App'x 309, 313-14 (11th Cir. 2009); *see also Riles v. Augusta-Richmond Cnty. Comm'n*, 2017 WL 3668620, at *2 (S.D. Ga. Aug. 23, 2017); *Nohr v. Jang*, 2015 WL 13904674, at *1-2 (N.D. Ga. Sept. 15, 2015).

declaratory judgment action, an "actual controversy" must exist. *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co*., 68 F.3d 409, 414 (11th Cir.1995). The issue is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[4] *Md. Cas. Co. v. Pac. Coal & Oil Co*., 312 U.S. 270, 273 (1941). Here, GranBio has adequately alleged that it has standing to seek declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists regarding the enforceability of the Draft MOU. Petron and GranBio cannot agree on the enforceability and scope of the Draft MOU, "including any purported obligations of GranBio or its affiliate, AVAPCO LLC, under the Draft MOU." Doc. 1 ¶¶ 20, 23. These facts sufficiently allege that there is a substantial likelihood that GranBio will suffer injury in the future; therefore, an actual controversy of a justiciable nature exists, and GranBio has standing to seek a declaratory judgment against Petron.

In sum, the Court has subject matter jurisdiction over this action. The Court also has specific personal jurisdiction over Petron, and GranBio has sufficiently pled that it has standing to pursue declaratory relief.

## IV. DISCUSSION

GranBio seeks a declaratory judgment that the Draft MOU between the parties is unenforceable because it was clearly labeled as a nonfinal draft, lacked material terms, and merely expressed the desire of the parties to potentially form a business

---

[4] The Supreme Court has distilled this requirement into three discrete components: "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Progressive Mountain Ins. Co. v. Middlebrooks*, 805 Fed. Appx. 731, 734 (11th Cir. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).

relationship in the future.[5]  Docs. 1; 10.  To obtain a declaratory judgment, GranBio

must establish that the pleadings demonstrate that is entitled to the requested relief.

## A. Agreement Not Enforceable

By way of default, it is established that Georgia law applies to GranBio's claim.

Doc. 10 at 2.  Under Georgia law, for a contract to be enforceable, there must be mutual

assent to the terms of the agreement.  O.C.G.A. § 13-3-1.  This mutual assent, often

referred to as a "meeting of the minds," requires that both parties have a clear and

unequivocal understanding of the material terms and that they agree to be bound by

those terms.  O.C.G.A. § 13-3-2.  "Where it is evident from a written instrument, that the

parties contemplated that it was incomplete, and that a binding agreement would be

made subsequently, there is no agreement."  *Coldmatic Refrigeration of Canada, Ltd. v.

Hess*, 257 Ga. App. 753, 754, 572 S.E.2d 6, 7 (2002) (citation omitted).  Thus, "[a]n

agreement to reach an agreement is a contradiction in terms and imposes no obligation

on the parties thereto."  *Hartrampf v. Citizens & Southern Realty Investors*, 157 Ga.

App. 879, 881, 278 S.E.2d 750, 752 (1981) ("An agreement to reach an agreement is

no contract at all and imposes no obligation on the parties.").

Here, GranBio argues that it does not have any legal obligations under the Draft

MOU, as it was a non-binding and unenforceable agreement to agree, a mere "draft in

anticipation" of a potential future contract.  Docs. 1; 10.  GranBio argues that the Draft

---

[5] Even if the Draft MOU were enforceable, GranBio argues in the alternative that it only agreed to: (a) notify Petron when its technology would be licensed or otherwise commercially implemented for the purpose of producing ethylene/jet fuel from ethanol, and (b) grant Petron the right to enter into discussions with licensees to provide Petron's ethanol-to-ethylene ("ETE") technology (collectively, the "Purported Obligations").  Docs. 1; 10.  According to GranBio, however, both of these Purported Obligations are too vague to be understood, much less enforced.  Docs. 1 ¶ 23; 10.  Because the Court finds that the Draft MOU is unenforceable, it need not address these arguments.

MOU was clearly labeled as such, and the terms are unambiguous in indicating the non-binding nature of the document.  Doc. 10 at 4.  The Court agrees.

In this case, the Draft MOU clearly states on its face that it is not a final agreement.  Rather, the Draft MOU states "[t]hese terms are agreed in this draft in anticipation of turning this into a final MOU."  Doc. 1-1 at 3.  "GranBio never entered into a 'final MOU' with Petron".  Doc. 1 ¶ 11.  Additionally, the Draft MOU merely expresses the parties' desire to form a future business relationship related to Phase 2 of the ABBA project.  Docs. 1 ¶¶ 9-10; 1-1 at 2.  Under Georgia law, this is insufficient to create an enforceable contract.  "Unless an agreement is reached as to all terms and conditions and nothing is left to future negotiations, a contract to enter into a contract in the future is of no effect."  *Hess*, 257 Ga. App. at 754, 572 S.E.2d at 7; *see also Zappa v. Basden*, 188 Ga. App. 472, 475, 373 S.E.2d 246, 249(1988) (same); *Osta v. Moran*, 208 Ga. App. 544, 545,430 S.E.2d 837, 838 (1993) (same).  The explicit anticipation of a future final agreement negates any claim of mutual assent.  *See Estate of Ryan v. Shuman*, 288 Ga. App. 868, 874, 655 S.E.2d 644, 649 (2007).  Because mutual assent is essential for contract formation, an agreement that defers final agreement to a future date fails to establish the requisite "meeting of the minds."  *See Overton Apparel, Inc. v. Russell Corp*., 264 Ga. App. 306, 309, 590 S.E.2d 260, 264 (2003) ("An agreement to reach a final agreement is unenforceable."); *see also Terry Hunt Constr. Co. v. AON Risk Servs., Inc*., 272 Ga. App. 547, 551-52, 613 S.E.2d 165, 168-69 (2005).  By its own terms, the Draft MOU in this case acknowledges that the parties have not yet agreed on the final terms and conditions, and thereby lacks the requisite meeting of the minds to form an enforceable contract.

In short, a valid contract requires a "meeting of the minds" regarding all material terms.  *See* O.C.G.A. §§ 13-3-1, 13-3-2.  Here, the absence of such terms indicates that no binding contract was intended or formed.  The document was merely a preliminary expression of interest that outlined the desire of the parties to potentially form a business relationship in the future.  These allegations are sufficient to establish that the Draft MOU is unenforceable and GranBio is entitled to default judgment against Petron.

**B. Hearing Not Necessary**

Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, a court must conduct a hearing when it is necessary to determine the amount of damages or establish the truth of any allegations by evidence.  Here, GranBio seeks only declaratory relief and not damages.  The pleadings establish the facts necessary to determine that GranBio is entitled to the requested declaratory relief.  Therefore, a hearing is not necessary.

**V. CONCLUSION**

For the foregoing reasons, the Court finds that GranBio is entitled to a declaratory judgment that the Draft MOU is unenforceable.  Accordingly, GranBio's Motion for Entry of Default Judgment (Doc. 10) is **GRANTED**.  The Court hereby **DELCARES** that the Draft MOU between GranBio and Petron is unenforceable.

**SO ORDERED**, this 9th day of July, 2024.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT